IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINE CONSTRUCTION BENEFIT FUND *et al.*, | |
| Plaintiffs, | No. 20-cv-02741 |
| v. | Judge John F. Kness |
| ASOMEO ENVIRONMENTAL RESTORATION INDUSTRY, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Line Construction Benefit Fund ("LINECO"), National Electrical Benefit Fund ("NEBF"), and National Electrical Annuity Plan ("NEAP") are multiemployer pension funds suing Defendant Asomeo Environmental Restoration Industry, LLC for unpaid pension contributions. Plaintiffs allege that Defendant owes these missing payments under the terms of collective bargaining agreements ("CBAs") entered into between Defendant and IBEW Local Union 1245 (the "Union"). Defendant has moved to dismiss the complaint under Rules 12(b)(6) and (b)(7) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' suit must be dismissed because Plaintiffs failed to use the mandatory grievance procedures set out in the CBAs and failed to join the Union to this action.

As explained below, however, the CBAs, and the Trust Agreement that governs Plaintiffs' operations, provide Plaintiffs with broad authority to sue for unpaid

contributions without first submitting the dispute to the CBA grievance procedures. Moreover, because the Union's absence will not subject Defendant to the risk of duplicative damages nor impede Defendant's defense, the Union does not need to be joined to this action. Accordingly, Defendant's motion to dismiss (Dkt. 37) is denied. Plaintiffs' motion for leave to file an amended complaint (Dkt. 79) is granted.

## I. BACKGROUND

Plaintiffs are multiemployer benefit funds governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 *et seq.* (Dkt. 1 ¶¶ 1, 3.) Plaintiffs receive contributions from numerous employers, including Defendant, under CBAs entered between Defendant and the Union.[1] (*Id.* ¶ 3.) Plaintiffs operate in accordance with the terms and provisions of the Restated Agreement and Declaration of Trust ("Trust Agreement"). (*Id.*) Under the Trust Agreement, Plaintiffs must receive, hold, and manage all monies that are required to be contributed under the applicable CBA between Defendant and the Union. (*Id.* ¶ 7.)

Plaintiffs allege that Defendant "has repeatedly failed to submit accurate contribution reports and the required payments" under the CBAs. (*Id.* ¶ 10.) Defendant allegedly owes Plaintiffs contributions for the months of June 2019 through November 2019 and January, February, and March 2020, in the amount of $921,942.60. (*Id.* ¶ 14.) Defendant's failure to make these contributions allegedly

---

[1] Defendant entered two CBAs with the Union that required contributions to Plaintiffs. (*See* Dkt. 1-2 and Dkt. 1-3.) The First CBA obligated Defendant to make contributions only to Plaintiff LINECO, and the Second CBA obligated Defendant to make contributions to all three Plaintiffs. (*See* Dkt. 1-2, at 22–23; Dkt. 1-3, at 18–19.)

violates the CBAs and the Trust Agreement. Plaintiffs therefore seek to enforce provisions of these agreements under Sections 502(g)(2) and (a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) and (g)(2), and Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).

Defendant has moved to dismiss the complaint under Rules 12(b)(6) and (b)(7) of the Federal Rules of Civil Procedure. (Dkt. 37.) According to Defendant, Plaintiffs are "third-party beneficiaries of the CBAs" and must resolve any dispute arising from the CBAs according to the grievance procedures provided in those agreements. Plaintiffs' suit should thus be dismissed under Rule 12(b)(6) as untimely because, Defendant contends, Plaintiffs "exceeded the contractually agreed [] 15-day time frame within which relief could be sought"; as unripe because Plaintiffs "failed to follow the mandatory dispute resolution provisions set out in the CBAs"; or, due to the CBAs' arbitration provisions, this Court must compel Plaintiffs to arbitrate their claims. (Dkt. 38 at 2–3.) In the alternative, Defendant moves to dismiss under Rule 12(b)(7) for failing to join an indispensable party (namely, the Union). (*Id.* at 3.)

Plaintiffs respond that they are not subject to the grievance and arbitration provisions within the CBAs, relying on the Supreme Court's decision in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984), and the Seventh Circuit's analysis in *Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc.*, 856 F.2d 837 (7th Cir. 1988). (Dkt 42 at 3.) Plaintiffs contend that the CBAs and Trust Agreement, when interpreted together, do not show that the parties intended Plaintiffs to submit contribution claims through the CBA grievance

3

procedures. (*Id.* at 4.) In addition, Plaintiffs maintain that, because Plaintiffs "do not seek to recover damages for or on behalf of the Union or its members," the Union is not an indispensable party. (*Id.* at 13.)

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). A motion under Rule 12(b)(7) seeks dismissal based on the failure to join "a necessary and indispensably party" as required by Rule 19 of the Federal Rules of Civil Procedure. *Ochs v. Hindman*, 984 F. Supp. 2d 903, 906 (N.D. Ill. 2013).

In evaluating a motion to dismiss under Rules 12(b)(6) and (b)(7), the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678; *Ochs*, 984 F. Supp. 2d at 906. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Iqbal*, 556 U.S. at 678–79.

4

## III. DISCUSSION

### A. Defendant's Motion to Dismiss is Denied.

#### i. Plaintiffs are Not Required to Use the CBAs' Grievance Procedures.

In *Schneider*, the Supreme Court addressed whether multiemployer ERISA trust funds, like Plaintiffs here, are bound by the grievance procedures in the CBA between the employer and union. 466 U.S. at 365. In *Schneider*, the employers and the union entered CBAs that required the employers to participate in two multiemployer trust funds and incorporated the terms of two trust agreements. *Id.* at 368–39. Those trust agreements, in turn, required the employers to contribute to the funds and gave the funds authority to examine the employers' records for compliance. *Id.* In addition, the trust agreements gave the funds authority to initiate legal proceedings to enforce the contribution requirements. *Id.*

When the funds in *Schneider* sued the employers for unpaid contributions, the employers moved to dismiss the complaint, arguing that, as "third-party beneficiaries of the collective-bargaining agreement, the [funds] are bound by the arbitration clauses provided therein to the same extent the Union would be if it were seeking judicial enforcement of those agreements." *Id.* at 370. *Schneider*'s employers relied on the general rule that "the promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract." *Id.* Thus the employers contended that the funds' claims, which "raised disputed interpretations under the [CBA]," must first have been submitted "to the applicable arbitration procedures." *Id.* at 366. But the Supreme Court rejected the employers'

5

argument and concluded that "neither the trust agreements nor the [CBAs] at issue here evidence any intent to condition the contractual right of the trustees to seek judicial enforcement of the trust provisions on exhaustion of the arbitration procedures contained in [the CBAs]. *Id.* at 376.

In reaching this conclusion, the Court first noted that the "presumption of arbitrability" that applies to disputes "between *the union* and the employer" was "not a proper rule of construction" in disputes between *funds* and employers. *Id.* at 372 (emphasis added).[2] Next the Court examined the text of the trust agreements and CBAs. *See id.* at 373–76; *see also Mosbeck*, 856 F.2d at 840 (*Schneider* "said that the issue to be decided was whether the relevant trust fund agreements and [CBA] demonstrated an intent to arbitrate."). Those agreements granted the funds the authority to initiate "any legal proceedings" to collect contributions and did not condition that authority on exhaustion of the CBA's grievance procedures. *Id.* at 373. Conversely, the CBAs only required arbitration of disputes "between the Company and the Union" but did not "expressly require[] the arbitration of disputes between the [funds] and the employers." *Id.* at 374. Moreover, it was "unreasonable to infer" that the parties would "agree to subordinate" the trust agreements' enforcement mechanisms to a *single* employer's CBA because the multiemployer funds must protect the interests of *all* the participating unions and employers. *Id.* Of particular

---

[2] The "presumption of arbitrability" for disputes between the union and employer "furthers the national labor policy of peaceful resolution of labor disputes" because "it requires the parties to forgo the economic weapons of strikes and lockouts." *Schneider,* 466 U.S. at 371–72. Multiemployer trust funds, however, "have no recourse to either of those weapons," so "requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all." *Id.* at 372.

relevance was the employers' concession that only the union or employer could invoke the arbitration process under the CBAs.³ *Id.*

In *Mosbeck*, the Seventh Circuit applied *Schneider*'s reasoning and held that a multiemployer pension fund was not required to submit to arbitration its action to collect unpaid contributions. 856 F.2d at 838. *Mosbeck*'s trust agreements "unambiguously allow[ed]" the funds "to bring civil actions to enforce contributions requirements." *Id.* at 840. In addition, the CBA incorporated the trust agreements by reference, so the Seventh Circuit assumed "that the parties to the [CBA] were aware of the language in the trust agreement that allowed the [fund] to bring civil actions," which was "significant evidence of an intention that the [funds] not be bound by arbitration." *Id.* at 841. And the sections of the CBA that discussed arbitration of contribution disputes were "expressly addressed to the parties to the [CBA]," the union and employer, and "not to the [funds]." *Id.* Finally, the CBA did not "clearly allow the [funds] to access the arbitration mechanisms." *Id.* at 842.

After reviewing the Trust Agreement and CBAs at issue here in the light of *Schneider* and *Mosbeck*, the Court holds that Plaintiffs are not subject to the CBAs' grievance procedures.⁴ The Trust Agreement grants Plaintiffs broad authority to

---

³ Because the funds could not invoke the arbitration procedures themselves, it was "unreasonable to infer that the parties to these agreements, or to the trust agreements, intended the [funds] to rely on the Union to arbitrate their disputes with the employer." *Id.* at 375. That is because the union's interests may, on occasion, diverge from the funds' interests. *Id.*

⁴ Plaintiffs attach the Trust Agreement as an exhibit to their response to Defendant's motion to dismiss. (Dkt. 42-1.) Defendant argues that the Court cannot consider the Trust Agreement in determining whether Plaintiffs are required to use the CBA grievance procedures because this "extraneous document" was "not submitted (or even referenced)" in

7

enforce contribution requirements outside the CBA grievance procedures. Plaintiffs may "secur[e] any ruling from any Federal or State governmental agency in connection with [the Trust Agreement], collecting and enforcing contributions to the Fund" (Dkt. 42-1 at 8); "receive, demand and collect contributions due the Trust or Fund and payments from any source whatsoever to the extent permitted by law and to take such steps, including institution and prosecution of or the intervention in any proceedings at law or in equity" to "collect such contributions and payments that may be due the Trust Fund or the Trustees" (*Id.* at 9); and "do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or advisable for the protection of the property held hereunder" (*Id.*). Delinquent employers are also "obligated to pay" in "any legal proceeding" interest, liquidated damages, and attorneys' fees and costs. (*Id.* at 15–16.) These provisions of the Trust Agreement demonstrate a clear intent to allow Plaintiffs to sue to enforce contribution and reporting requirements established thereunder.

---

Plaintiffs' complaint. (Dkt. 45 at 3.) Although courts are generally prohibited from considering documents outside the pleadings when deciding a motion to dismiss, "[d]ocuments attached to a motion to dismiss" may be considered "if they are referred to in the plaintiff's complaint and are central to his claim." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). This exception is "aimed at cases interpreting, for example, a contract." *Id.* (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). This exception, which "typically applies to attachments to motions to dismiss," also "extends to documents attached to a plaintiff's response." *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010). Plaintiff mentions the Trust Agreement in three separate paragraphs in the complaint. (*See* Dkt. 1 ¶¶ 3, 7, 15.) The Trust Agreement is also central to the case because the Court cannot determine the parties' intent without examining the CBA *and* the Trust Agreement. And the exception is appropriate here because whether Plaintiff must utilize the CBA grievance procedures is fundamentally a "question of contract interpretation," *Schneider*, 466 U.S. at 371. *See Rosenblum*, 299 F.3d at 661. Accordingly, the Court will consider the Trust Agreement.

Nor do the CBAs evince any contrary intent. The sections discussing the grievance procedures are addressed to the parties to the CBAs—Defendant and the Union—but not to Plaintiffs. (Dkt. 1-2 at 1, 26; Dkt. 1-3 at 1, 22.) Whether Plaintiffs may even invoke the CBAs' grievance procedures is thus an open question. *Schneider*, 466 U.S. at 374; *Mosbeck*, 856 F.2d at 841–42. Moreover, the Trust Agreement predates both CBAs and is incorporated by reference in the second CBA, so it can be presumed that the parties were aware of the provisions authorizing litigation of contribution disputes. *See Mosbeck*, 856 F.2d at 841. As for the second CBA, it also states that the failure of an employer "to make all payments provided for . . . shall be a breach of [the second CBA] and will further require action by the Trustees as set forth in the Trust Agreement." (Dkt. 1-3 at 18.) In other words, the second CBA says that Plaintiffs should resolve contribution disputes according to the mechanisms described in the Trust Agreement, which expressly permits litigation.

Defendant relies on *Chicago District Council of Carpenters Pension Fund v. Fonsa Construction, Inc.*, 2000 WL 1469438 (N.D. Ill. Oct. 2, 2000), and *Jaffee v. Shanin Co.*, 763 F. Supp. 286 (N.D. Ill. 1991). In both cases, the district court held that ERISA funds must avail themselves of the grievance procedures set out in the CBAs. *See Fonsa*, 2000 WL 1469438, at *3 ("Plaintiffs sue as third party beneficiaries of the Collective Bargaining Agreement" and "they are bound by the applicable terms of the Agreement they sue on."); *Jaffee*, 763 F. Supp. at 290 (The parties intended for contribution disputes to be arbitrated because this "interpretation . . . places all of the various sections of the collective bargaining agreement in harmony with one

9

another."). In both of those cases, however, the CBA was the only document to interpret; there was no separate trust agreement. *See Fonsa*, 2000 WL 1469438, at *2; *Jaffee*, 763 F. Supp. at 290. And the CBAs in both cases had broad arbitration requirements. *See Jaffee*, 763 F. Supp. at 290 ("In both *Schneider* and [*Mosbeck*], the arbitration clauses were written very narrowly," but the arbitration clause in *Jaffee* was "written much more broadly."). These differences distinguish *Fonsa* and *Jaffee* from this case, where there is a Trust Agreement that explicitly allows litigation of contribution disputes and CBAs that make no mention of contribution disputes.

In sum, Plaintiffs were not required to avail themselves of the CBAs' grievance procedures. Defendant's arguments regarding timeliness, ripeness, and arbitration, therefore, are beside the point. Defendant's motion to dismiss under Rule 12(b)(6) is accordingly denied.

### ii. The Union is Not a Necessary Party Under Rule 19.

Defendant also moves to dismiss under Rule 12(b)(7) (Dkt. 38 at 11), which provides that a complaint may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). According to Defendant, the Union is a necessary party to this action under Rule 19, which requires the joinder of any person that:

> claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).

Defendant contends that the Union must be joined under Rule 19(a)(1)(B) for

10

two reasons. First, the Union's absence will "impair or impede" Defendant's defense. According to Defendant, the CBAs expressly authorized Defendant to remit contribution payments directly to the Union, meaning Plaintiffs, to succeed on their claim, must prove that Defendant failed to do so. (Dkt. 38 at 12.) Defendant maintains that it remitted the allegedly unpaid contributions to the Union, so its "defenses concern its agreements and communications with [the Union]." (*Id.*) Second, Defendant contends that joinder of the Union is required to avoid the risk of "duplicate damages and/or inconsistent results." (*Id.*) As a counterparty to the CBAs, the Union is also an aggrieved party that could seek its own remedies against Defendant for unpaid contributions. (*Id.* at 12–13.)

Plaintiffs disagree that there is the potential for duplicative damages. (Dkt. 42 at 13.) Although the CBAs allow contribution payments "to be mailed to the Union as a collection agent for the [Plaintiffs], the Union does not have an independent right under ERISA to collect these contributions." (*Id.*) As a result, even if the Union were to make a similar claim (which it has not), it could not seek the same relief (unpaid ERISA contributions) as Plaintiffs. (*Id.*) Full relief can thus be afforded in this action without joinder of the Union. (*Id.*)

The Union is not a necessary party under Rule 19(a). Plaintiffs seek to audit Defendant's contribution reports and payment of all due contributions. (Dkt. 1 at 1.) Defendant asserts that contributions were paid directly to the Union instead of Plaintiffs. But Defendant provides no reason why it cannot advance this defense and obtain relevant proof via the normal means of discovery. In any event, the "interest"

11

protected by Rule 19(a)(1)(B)(i) "refers to the interests of absent persons, not the interests of parties to the action." *Laborers' Pension Fund v. McKinney Const. Corp.*, 2000 WL 1727779, at *5 (N.D. Ill. Nov. 21, 2000). Defendant's interest in defending the suit based on its tendering contributions to the Union is irrelevant to the Rule 19 analysis.

Nor is there a risk of duplicative damages. Whatever claims the Union may (if ever) assert against Defendant, they are distinct from Plaintiffs'. *See Riordan v. One Stop Food & Liquor Store, Inc.*, 372 F. Supp. 644, 646 (N.D. Ill. 1974) ("The Seventh Circuit has held that Trustees of a Welfare Retirement Fund are the real parties in interest in a suit to recover sums due to the fund by an employer. *Lewis v. Quality Coal Corp.*, 243 F.2d 769 (7th Cir. 1957)."); *Alaska Trowel Trades Pension Fund. v. Lopshire*, 855 F. Supp. 1077 (D. Alaska 1994) ("The obligation to make contributions is owed to the trust funds, not to the union."), *reversed in part on other grounds*, 103 F.3d 881 (9th Cir. 1996). That is why judges in this District have routinely held that unions are not required to be joined in actions for unpaid contributions between ERISA trust funds and employers. *See, e.g.*, *Dugan v. City of West Chicago*, 2008 WL 5423565, at *2 (N.D. Ill. Dec. 29, 2008) (The "Union's motion to dismiss focuses on its (likely correct) contention that the Union is not a necessary party" in an action for unpaid contributions.); *McKinney*, 2000 WL 1727779, at *4–5 (The union's presence is "not necessary in order to determine whether the Funds are entitled to an audit and unpaid contributions and dues."); *Paul v. Lindgren*, 375 F. Supp. 843, 849–50 (N.D. Ill. 1974) (same.); *Owen v. One Stop Food & Liquor Store, Inc.*, 359 F. Supp.

243, 246 (N.D. Ill. 1973) (same). Moreover, "the prospect of later litigation is not in itself sufficient to make the Unions necessary parties." *Florian v. Sequa Corp.*, 2002 WL 31844985, at *5 (N.D. Ill. Dec. 18, 2002); *see also Mar-Can Transp. Co., Inc. v. Local 854 Pension Fund*, 2022 WL 35588, at *4 (S.D.N.Y. Jan. 4, 2022) ("The mere possibility of subsequent litigation is insufficient to invoke Rule 19."). For all of these reasons, the Union is not a necessary party under Rule 19(a). Defendant's motion to dismiss under Rule 12(b)(7) is thus denied.

      **B.**    **Plaintiffs' Motion for Leave to File an Amended Complaint is Granted.**

While Defendant's motion to dismiss was pending, Plaintiffs filed a motion for leave to submit an amended complaint under Rule 15(a) and Rule 21 of the Federal Rules of Civil Procedure. (Dkt. 79 at 1.) Plaintiffs' proposed amended complaint removes NEBF and NEAP as Plaintiffs because Defendant, since this suit commenced, has paid the contributions owed to these two Plaintiffs. (*Id.* at 2.) LINECO would thus be the only remaining Plaintiff. LINECO then seeks additional damages in the proposed amended complaint for allegedly unpaid contributions due in certain months after the original complaint was filed. (*Id.* at 3.) Defendant opposes the motion as futile and unnecessary. (Dkt. 86 at 2.)

Defendant contends that, because they do not remedy any of the defects identified in Defendant's motion to dismiss, the amendments in the proposed amended complaint are futile. (*Id.* at 4.) Plaintiffs' proposed amendments are not futile, however, because Defendant's motion to dismiss is, for the reasons previously

13

discussed, without merit.[5]

Defendant also contends that the amendments are unnecessary because the procedurally proper mechanism for dismissing NEBF and NEAP from this action is Rule 41 (instead of Rules 15(a) and 21) of the Federal Rules of Civil Procedure, which governs voluntary dismissals of actions, and the original complaint already includes a request for the additional money LINECO seeks to add to the amended complaint. Defendant's contentions fail.

There is no authority for Defendant's proposition that NEBF and NEAP *must* be dismissed from this action using Rule 41. As the Seventh Circuit has explained, Rule 15(a) "allows a plaintiff to amend his complaint—including by adding or dropping parties and claims—as a matter of right in some situations and by court order in others, and 'the court should freely give leave when justice so requires.' " *Taylor v. Brown*, 878 F.3d 851, 858 (7th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)). Moreover, the Court under Rule 21 may "[o]n motion or on its own, . . . at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Plaintiffs' motion to drop NEBF and NEAP is thus procedurally proper.

---

[5] Plaintiff's motion to amend does not moot Defendant's motion to dismiss because Defendant seeks to dismiss the proposed amended complaint on the same grounds. *See Trading Tech. Intern., Inc. v. BGC Partners, Inc.*, 2010 WL 3272842, at *1 (N.D. Ill. Aug. 17, 2010) (motion to dismiss not moot if "defendant wishes to apply that same motion to the amended complaint because the amended complaint has not remedied the previous deficiencies"). According to Defendant, the proposed amended complaint suffers from the same flaws as the original complaint. Plaintiffs respond the complaint "is not flawed" and incorporate all the arguments from their response to Defendant's motion to dismiss into their motion to amend. As a result, the motion to amend does "not substantially affect the motion to dismiss" because the "substance of the [] Amended Complaint would remain unchanged." *1340 E. 9th St. Realty Corp. v. Campus Pointe Coles, LLC*, 2021 WL 6102433, at *1 (C.D. Ill. Sept. 1, 2021).

In addition, LINECO's proposed amendment to the damages period is permissible under Rule 15(a)'s "liberal approach" to granting leave to amend. *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021). The original complaint, which was filed on May 6, 2020, seeks unpaid contributions totaling $921,942.60 and "such additional monies that accrue during the pendency of this lawsuit." (Dkt. 1 at 4.) Because of LINECO's request for damages that "accrue during the pendency of this lawsuit," Defendant contends the amendment is unnecessary. (Dkt. 86 at 3–4.) A plaintiff, however, is the master of its complaint, and leave to amend should be freely given "as long as amendments do not unfairly surprise or prejudice the defendant." *Toth v. USX Corp.*, 883 F.2d 1297, 1298 (7th Cir. 1989). There is no discernible undue prejudice to Defendant from this amendment, which clarifies the damages sought; in fact, Defendant does not even make such an argument. Accordingly, Plaintiffs' motion for leave to amend (Dkt. 79) is granted.

## IV.   CONCLUSION

Defendant's motion to dismiss (Dkt. 37) is denied. Plaintiffs' motion for leave to file an amended complaint (Dkt. 79) is granted. Any amended complaint must be submitted as a separate docket entry within one week of the entry of this order.

SO ORDERED in No. 20-cv-02741.

Date: August 17, 2023

JOHN F. KNESS
United States District Judge

15